[No. 429-1.    Division One—Panel 2.    December 20, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. AUDREY RUUD, *Appellant.*

*Barbara M. Durham,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Douglas S. Dunham, Deputy,* for respondent.

SWANSON, J. — Audrey Ruud was charged with first-degree murder alleged to have been committed as follows:

the said Audrey Ruud, also known as Audrey Fullen, together with another, in the county of King, state of Washington, on or about the 10th day of August, 1969, while . . . engaged in . . . robbery . . . did shoot at . . . Karsten Knutsen . . . with . . . a .38 caliber revolver . . . mortally wounding . . . Karsten Knutsen from which . . . wounds . . . [he] died . . .

She was convicted of the charge and sentenced to life imprisonment. She appeals from the conviction and sentence.

We have omitted from this opinion the sordid details of appellant Ruud's participation in this grisly crime. Their inclusion would serve no useful purpose. Further appellant raises no question as to the sufficiency of the evidence to uphold the verdict, and with good reason—it is nigh on to overwhelming. Her arguments on appeal are directed primarily to claimed infringements upon her constitutional rights; denial of a speedy trial; improper admission of confessions into evidence; and a failure to properly inquire into appellant's competency to stand trial.

Appellant first assigns error to the trial court's denial of her motion to dismiss the charge or reinstate the original trial date. She claims the 60-day rule, RCW 10.46.010[1] was violated and her constitutional right to a speedy trial denied by the trial court.

Appellant Audrey Ruud and codefendant Patrick Fullen were originally scheduled to be tried on December 8, 1970, by stipulation of counsel. Subsequently, a continuance was granted when Fullen's counsel became ill, and the trial date

---

[1]RCW 10.46.010 states: "If a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed, unless good cause to the contrary is shown."

was reset for February 2, 1971. Appellant argues that the continuance from December 8 to February 2 caused such a deterioration in her mental condition that prejudice resulted.

■ The trial date originally agreed upon, December 8, 1970, exceeded the 60-day requirement of RCW 10.46.010 by 9 days. By agreeing to a trial date beyond 60 days, appellant waived her right to a trial within 60 days, and she cannot now complain. *See State v. Gibson,* 75 Wn.2d 174, 449 P.2d 692 (1969); *George v. Day,* 69 Wn.2d 836, 420 P.2d 677 (1966).

Further, the statute only requires that a trial be held within 60 days after the filing of the information *unless good cause to the contrary is shown.* Here, there was neither a demand that the trial be held within the 60-day limitation of the statute, nor is there an absence of good cause. A continuance was granted because Fullen's counsel became ill. At that time, appellant and Fullen were scheduled to be tried jointly.[2]

■ Appellant then argues that her constitutional right to a speedy trial was violated. The constitutional right to a speedy trial is measured by these constitutional standards:

(1) a delay of such length alone as to amount to a denial of the right to a speedy trial; (2) prejudice to the defense arising from the delay; (3) a purposeful delay designed by the state to oppress the defendant; or (4) long and undue imprisonment in jail awaiting trial.

*State v. Christensen,* 75 Wn.2d 678, 686, 453 P.2d 644 (1969).

■ A careful review of the record fails to reveal the presence of any of the factors just described. First, appellant's case was filed September 30, 1969, and brought to trial February 2, 1970, 4 months and 2 days after filing of

[2]Subsequently, on February 2, 1970, Fullen's counsel moved for separate trials, as did the state with the request that they be tried consecutively in order to accommodate the three police witnesses the state intended to bring from Florida. Separate but consecutive trials were then ordered.

the information. Such a delay does not standing alone show that the right to a speedy trial has been denied. *See Pollard v. United States*, 352 U.S. 354, 1 L. Ed. 2d 393, 77 S. Ct. 481 (1957); *State v. Alter*, 67 Wn.2d 111, 406 P.2d 765 (1965); *State v. Christensen, supra,* and cases cited therein. Second, appellant's claim of prejudice is based upon an affidavit which indicates a belief that several witnesses might leave the state. The affidavit also alludes to mental deterioration. The record does not disclose that witnesses did leave the state, nor that appellant's physical or mental condition deteriorated in any significant way because of the delay. Prejudice must be specific and demonstrated. It cannot be based on speculation, and it must have impaired the preparation of the defense. *State v. Christensen, supra.* Thirdly, no indication of a purposeful or designed delay to oppress the appellant by the state is suggested by the record. The reason for the continuance to February 2 was the illness of codefendant's counsel, together with the problems relative to scheduling a joint trial or consecutive separate trials involving out-of-state witnesses expected to testify in both cases. The 4½-month incarceration does not constitute long and undue imprisonment sufficient to support a conclusion that the constitutional right to a speedy trial was denied. The court in *Christensen*, 75 Wn.2d at 688, said:

> Significantly, the defendant cites not a single authority for a dismissal with prejudice, not a solitary precedent to sustain a holding that a 6-month delay between the filing of an information and trial amounted to a denial of a speedy trial under the state and federal constitutions.

■ Appellant's next claim of error is directed to the trial court's admission into evidence of the statements she made at the time of her arrest. She contends that one Burt Hayes, though not a police officer, was present at the time of her arrest in Florida, when the incriminating statements were made. She argues that the state failed to call him as a witness, which brings into play the presumption or infer-

ence of the missing witness rule[3] applied in *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968). The court in *Davis* found that the missing witness rule applied, so that it was error to refuse an instruction based on such rule. Here, the claimed error is not directed to an instruction refused, but to the trial court's factual determination of the admissibility of incriminating statements. Appellant seems to contend that the inferences that are permissible when the state fails to call a witness peculiarly available to it, would require us to say that the prosecution failed to bear the burden placed upon it by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). We disagree. *State v. Davis, supra,* is inapposite. The uncalled witness Hayes was not a member of a law enforcement agency and was not the only other witness to the interrogation. The state called all three police officers who were present at the time the statements were made. On the contrary, as stated in *Davis,* 73 Wn.2d at 277:

> The uncalled witness was a member of the same law enforcement agency as the testifying officer. He was the only other witness to the interrogation. . . . The uncalled witness worked so closely and continually with the county prosecutor's office with respect to this and other criminal cases as to indicate a community of interest between the prosecutor and the uncalled witness.

Here, the witness Hayes was equally available to either party. Further, it does not appear that the testimony of Hayes would be other than cumulative. If the presumption arising from a failure to call a witness is to be applied, the testimony of such witness must not be trivial or cumulative. *Wright v. Safeway Stores, Inc.,* 7 Wn.2d 341, 109 P.2d 542, 135 A.L.R. 1367 (1941).

---

[3]The "missing witness rule" defined in *Wright v. Safeway Stores, Inc.,* 7 Wn.2d 341, 109 P.2d 542, 135 A.L.R. 1367 (1941), and quoted with approval in *State v. Davis, supra* at 276, states:

". . . it has become a well established rule that where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so,—the jury may draw an inference that it would be unfavorable to him. . . ."

Appellant also relies on *State v. Erho,* 77 Wn.2d 553, 463 P.2d 779 (1970), where the state called only one officer to testify as to the warnings given and the statements received, and failed to call the officers who were present at the time of the arrest and who accompanied the defendant to the police station. This involved the same kind of "swearing contest" described in *State v. Davis, supra,* and the court said in *Erho,* 77 Wn.2d at 559:

> Where, as here, there appears to be adequate opportunity to obtain and present the corroborating testimony of other officers present at the scene of apprehension and custody, we are satisfied the state fails to meet the heavy Miranda burden of proof when, without explanation, it omits to supply such corroboration. [Citation omitted.]

The facts described in *Davis* and *Erho* bear little, if any, resemblance to the facts here. The statements were properly admitted.

The third issue raised is the question of appellant's competency to stand trial. Appellant points to this statement in *State v. Mahaffey,* 3 Wn. App. 988, 994, 478 P.2d 787 (1970), to support her contention:

> If a " 'substantial question of *possible* doubt . . .' " is raised, an "inquiry into the defendant's competency . . ." *must* be made. . . .
>
> We hold that a request for a competency hearing by defense counsel should be granted unless it clearly appears that the request is frivolous and not made in good faith.

*Mahaffey* is not in point. During a preliminary CrR 101.20W confession hearing held February 2, 1970, while conferring in the court's chambers, appellant's trial counsel raised the question of his client's ability to sufficiently understand her peril. The prosecuting attorney responded by offering a motion that the court conduct an examination as to her competency. After a conference among all counsel as to the proper course to follow, the court stated:

> Well, I understand then if I make a determination after talking with her that there is any doubt in my mind as to her understanding as to what is taking place, then I think

I should appoint an independent psychiatrist to examine her and see if she is fit to go to trial.

Appellant's counsel stated in part:

I certainly am in agreement if the court does feel that she is competent to stand trial, I have no disagreement with the court.

The parties then stipulated to a procedure wherein the court would interrogate the appellant. She was seated in the witness chair and the court proceeded as follows:

Q I have been observing your conduct, young lady, and do you appreciate the seriousness of this matter? A Yes sir. Q Do you understand that there is a possibility that you might lose your life in this proceeding? A Yes sir. Q Are you able to assist your counsel without any difficulty? A Yes sir. Q Do you really appreciate everything that is taking place? A Yes sir. Q You know it is a serious matter for you? A Yes sir. Q Do you think that you are able to continue and understand what is taking place? A Yes sir, constantly.

Thereafter no question was raised or possible doubt suggested as to the competency of the appellant to proceed. The record of her testimony, and the extensive cross-examination at her trial which began 3 days later, contains no hint of incompetency to stand trial or failure to appreciate her peril.

Finally, appellant assigns error to certain questions directed to her on cross-examination suggesting that she had told Patrick Fullen "how it was fascinating to watch the blood come out of his throat," and that she "wanted to look at the brains," and "pick[ed] the brains up and play[ed] with them." The prosecutor indicated he would lay a foundation and a justification for these questions, so they were permitted to stand. Thereafter, *all counsel* entered into a stipulation[4] to the effect that the prosecutor had evidence which he was prepared to present to supply the necessary

---

[4] It should be noted that appellant's counsel on appeal candidly acknowledged in oral argument that she had overlooked the stipulation when preparing her brief on appeal.

foundation. Appellant's trial counsel represented and stated to the court:

> Mr. Marshall is worried there is some prejudice from asking questions of the nature he indicated and not being able to come along and prove them. I won't stipulate he can prove it but we will stipulate there will be testimony. THE COURT: *Testimony that would justify the questions?* MR. WAMPOLD: *Right.* MR. COHEN: *Testimony to provide the foundation.* THE COURT: *All right.*

(Italics ours.) This exchange discloses the stipulation upon which the prosecutor relied, and which the court accepted —that there was a foundation sufficient to justify the questions asked. Appellant is bound by the stipulation.[5]

Judgment affirmed.

FARRIS, A.C.J., and JAMES, J., concur.

Petition for rehearing denied January 10, 1972.

Review denied by Supreme Court February 24, 1972.

---

[5]The record seems to suggest that this stipulation was exchanged for another. All counsel stipulated that the question of the death penalty should not be submitted to the jury. The stipulation was accepted, and such question was withheld from the jury's consideration. We express no opinion as to the validity of such a stipulation, and, understandably, appellant does not question it.