[No. 434-1.   Division One—Panel 1.   July 24, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK JOSEPH
FULLEN, *Appellant*.

370

*Chas. H. W. Talbot* and *James Short,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Douglas S. Dunham, Deputy,* for respondent.

Callow, J.—The defendant, Patrick Fullen, appeals from his conviction of murder in the first degree. He seeks reversal of the conviction claiming:

1. Reputed admissions and confessions made to law enforcement officers in Florida were improperly admitted.

2. The statements and admissions made in Florida by a codefendant which implicated him, should have been excluded.

3. It was improper to forbid the defendant from testifying to conversations with his codefendant on the evening of the alleged crime and in forbidding the psychiatrist, who examined the defendant, from testifying to the history the defendant related to him.

4. The court erred in the instruction given and in refusing defendant's proposed instruction which dealt with the jury's consideration of admissions and confessions.

5. The court erred in allowing the jury to consider murder in the first degree and should have restricted their consideration to murder in the second degree and included offenses.

6. The final argument of the prosecutor constituted prejudicial misconduct.

Audrey Ruud was initially charged with Fullen as a codefendant. The trial court granted a defense motion for separate trials, and she was tried and convicted prior to the trial and conviction of the defendant. *State v. Ruud,* 6 Wn. App. 57, 491 P.2d 1351 (1971).

Karsten Knutsen was found dead near Woodinville, Washington, on August 23, 1969. He had been last seen in a restaurant with Audrey Ruud, and the defendant had been observed speaking to her about an hour before Knutsen left this restaurant with her. The next day money was withdrawn from the savings account belonging to Knutsen, and

the fingerprints of Ruud were found on the withdrawal slip. Two days after the disappearance of Knutsen, the landlady of the apartment in which Ruud and the defendant resided discovered that they had left without notice. She found bullet holes and a .38 caliber slug.

On September 17, 1969, a deputy sheriff in Lee County, Florida, contacted the defendant when he answered a call concerning a motel disturbance. The following took place: (Audrey Ruud is referred to as Mrs. Fullen.)

A  The first thing that he said, I said to him, was "I have been called on a complaint." That I was a Deputy and I wanted to talk to him and his wife in his room and his first answer was, "You know about the man in Washington?"

Q  Did you at that time have any information at all?

A  I had no information.

Q  Did you have any further conversation until you got to the room?

A  We started down—I advised him as we were walking this three hundred feet, I advised him not to say any more until we got to the room and I had given his rights. Then he said, "I killed a man in Washington."

The deputy sheriff also testified:

Q  Tell us what transpired in the hotel room at that time?

A  When we got to the door Mr. Fullen opened the door and invited me to come into the room and Mrs. Fullen was sitting there and pointing her finger like that (indicating) and said: "He murdered a man in Washington and I told him—"

Q  Did he say anything at that time?

A  "Yes, but you stabbed him with a knife."

Q  Did he tell you anything else at that time?

A  I stopped their testimony until I was able to advise them of their civil rights. I told them they had to be quiet until I could get—give his rights.

Q  Did he express how he felt about you being there at the time?

A  Yes, he said he was glad it was all over. That he was—

The defendant expresses disagreement with the admission of testimony by the law enforcement officers of Lee County, Florida, regarding his alleged admissions and confessions. He challenges the efficacy of the advice given to him by these officers concerning his constitutional rights claiming he was not told that any statement might be used as evidence against him, that he was not informed that a lawyer would be appointed for him at public expense without cost to him, and that it is improper for one to acknowledge being advised of his rights and be required at the same time to waive those rights.

Following the CrR 101.20W hearing, the trial court found that the defendant had signed a form, acknowledging that he had been advised of his rights and including a waiver of these rights, on September 17, 1969, and again on September 18, 1969. These were admitted into evidence. The form read:

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me.

The warnings which must be given an accused as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d

694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), are stated as follows in *State v. Creach,* 77 Wn.2d 194, 199, 461 P.2d 329 (1969):

> In general, *Miranda* requires that, prior to custodial interrogation of an accused, he must be warned: (1) that he has the right to remain silent; (2) that any statement he does make can and will be used as evidence against him in a court of law; (3) that he has the right to consult with counsel before answering any questions; (4) that he has the right to have his counsel present during the interrogation; (5) and that if he cannot afford an attorney, one will be appointed for him without cost to him, prior to questioning, if he so desires.
>
> The ultimate question for decision is always: Was the confession or statement voluntarily given? *State v. Darst,* 65 Wn.2d 808, 815, 399 P.2d 618 (1965). *Miranda,* however, indicates that an affirmative answer cannot be supported unless the five warnings listed are given to the accused prior to interrogation.

■ It was undisputed that he signed these forms, and the trial court concluded he did so being fully advised of his constitutional rights. The trial court also concluded that the oral admissions to the deputy sheriff were freely and voluntarily made, not the result of questioning on the part of the deputy sheriff nor the result of any awareness on the part of the deputy of the events in Seattle to which the defendant referred. The trial court further found that the admissions were given without threat, duress or coercion or prompted by any action by the deputy but were spontaneously uttered and were therefore admissible into evidence. We concur that the oral statements of the defendant were spontaneously and voluntarily uttered prior to custodial detention, were not in response to interrogation and were therefore admissible. *State v. Eldred,* 76 Wn.2d 443, 457 P.2d 540 (1969); *State v. Ratow,* 4 Wn. App. 321, 481 P.2d 20 (1971).

■ We have reviewed the record of the CrR 101.20W hearing and find the court's conclusions are supported by substantial evidence and a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct.

619 (1972); *State v. Bailey*, 79 Wn.2d 477, 487 P.2d 204 (1971); *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968).

The defendant acknowledged that he understood his rights. They were set forth in plain, clear and simple terms. There is no showing that he questioned these rights or expressed any doubts concerning them but was content to proceed on his understanding. The challenge raised on the basis of the supposition that the accused did not know his statements might be used as evidence against him is insupportable when the statement itself says it may be used in court. So also is the supposition that he did not understand that counsel would be appointed for him at public expense when he was told that if he could not afford a lawyer one would be appointed for him. To be unable to afford means unable to pay. We do not doubt that the defendant understood that if he could not pay for a lawyer, one would be supplied. *State v. Vining*, 2 Wn. App. 802, 472 P.2d 564 (1970).

The waiver of rights along with the acknowledgment of having been informed of them was made after due instruction and consideration. The defendant was free to decline to sign anything. He did not decline, but signed. The requirements of *Miranda* as reiterated in *State v. Creach, supra,* inform an accused of his rights in more explicit and preferable language than did the statement of those rights in the form used in Florida. We cannot say, however, that the communication to the defendant was faulty in any material aspect. The objections to the fullness and fairness of the advice given the defendant concerning his constitutional rights are objections as to form and fail as a challenge to the substance. *See also State v. Rowe*, 77 Wn.2d 955, 468 P.2d 1000 (1970); *State v. Blanchey*, 75 Wn.2d 926, 454 P.2d 841 (1969), *cert. denied*, 396 U.S. 1045 (1970); *Mountlake Terrace v. Stone*, 6 Wn. App. 161, 492 P.2d 226 (1971); *State v. Lanning*, 5 Wn. App. 426, 487 P.2d 785 (1971); Annot., 10 A.L.R.3d 1054 (1966).

It is the position of the defendant that the trial court erred in permitting testimony from the deputy sheriff from

Florida about statements and admissions made by Audrey Ruud which implicated the defendant. He claims that under the sixth amendment to the United States Constitution and section 22 of article 1 of the Washington State Constitution as amended by amendment 10, the defendant had a right to confront the witness against him. He cites *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970); *Barber v. Page,* 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968); *Douglas v. Alabama,* 380 U.S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074 (1965); *Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

When the CrR 101.20W hearing concluded, counsel argued for the separation of the trial of Ruud and Fullen citing *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), and *State v. Aiken,* 75 Wn.2d 421, 452 P.2d 232 (1969), *rev'd,* 403 U.S. 946, 29 L. Ed. 2d 856, 91 S. Ct. 2283 (1971). (*Aiken* was reversed on other grounds.) Separate trials were granted on that basis. We do not discuss or concern ourselves with the possibility of calling Audrey Ruud as a witness. She was physically available standing convicted with her conviction on appeal. We resolve the problem before us without consideration of those facts.

ABA Advisory Comm. on the Criminal Trial, Joinder and Severance § 2.3 (1968), reads as follows:

2.3 Severance of defendants.

(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:

(i) a joint trial at which the statement is not admitted into evidence;

(ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been [effectively] deleted, *provided that, as deleted, the confession will not prejudice the moving defendant;* or

(iii) severance of the moving defendant.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), should grant a severance of defendants whenever:

(i) if before trial, it is deemed necessary to protect a defendant's right to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of [a] *one or more* defendants; or

(ii) if during trial upon consent of the [severed] defendant *to be severed,* it is deemed necessary to achieve a fair determination of the guilt or innocence of [a] *one or more* defendants.

(c) When such information would assist the court in ruling on a motion for severance of defendants, the court may order the prosecuting attorney to disclose [to the court in camera] any statements made by the defendants which he intends to introduce in evidence at the trial.

(Footnote omitted.)

The written confession of Audrey Ruud implicating the defendant was not admitted in his separate trial. The total testimony which referred to words spoken by her has been set forth above except for the following questions and answers:

Q Were you present at the motel room when a knife was taken from the person of Audrey Ruud?

A I was.

Q When did this occur in relation to the time you got there?

A At the same time I asked Mr. Fullen and her where the weapons was at. She said, "The knife is in my pocketbook." He said, "The gun is on the front seat of the car." At that time Deputy Wooster and I reached in and got the knife out, which was a black handle switchblade knife.

This reply of the deputy sheriff containing the words of Audrey Ruud is unresponsive. The trial court could have stricken that portion if requested. This reference to words of Audrey Ruud was not considered material or erroneous by the defendant and neither do we so consider it. No objection to either statement of Audrey Ruud immediately

or earlier quoted was interposed at the time of trial before the jury. Both statements were made in the presence of the defendant. We turn to an examination of whether the introduction of these references was improper in any event.

*Bruton v. United States, supra,* holds that admission of a codefendant's confession that implicated the defendant constituted prejudicial error where the codefendant did not take the stand since it deprived the defendant of his right of cross-examination secured by the confrontation clause of the Sixth Amendment. This was held to be so even though an instruction that the confession could only be used against the codefendant and must be disregarded with respect to the defendant was given. *Bruton* is applicable to the states. *Roberts v. Russell,* 392 U.S. 293, 20 L. Ed. 2d 1100, 88 S. Ct. 1921, *rehearing denied,* 393 U.S. 899 (1968).

The material out-of-court statement made by the codefendant Ruud which came before the jury was the accusation, "He murdered a man in Washington and I told him ——." This is an accusation made prior to arrest. It was not an injection of a codefendant's testimony into evidence without the opportunity to cross-examine.

*State v. Redwine,* 23 Wn.2d 467, 161 P.2d 205 (1945), allows evidence of a defendant's silence in the face of an accusation made prior to his arrest to be presented:

> [W]hen a statement is made in the presence and hearing of an accused that is accusatory or incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and fact of his failure to deny, contradict, or object are admissible on a criminal trial as evidence of his acquiescence in its truth. [Citations omitted.]

*See also State v. Lounsbery,* 74 Wn.2d 659, 445 P.2d 1017 (1968).

*State v. Thorne,* 43 Wn.2d 47, 260 P.2d 331 (1953), allows into evidence an accusation and a reply thereto susceptible of being interpreted as an admission. Both the question or statement and the answer or comment in reply come in since the acknowledgment by the defendant adopts the ac-

cusation as his admission. To the accusation he replied, "Yes, but you stabbed him with a knife." Such was an admissible adoptive admission against interest. *State v. Thorne, supra*; *State v. Roberts*, 95 Wash. 308, 163 P. 778 (1917); C. McCormick, Evidence § 269 (E. Cleary 2d ed. 1972); 5 R. Meisenholder, Wash. Prac. § 428 (1965); 4 J. Wigmore, Evidence § 1069-71 (3d ed. 1940); 29 Am. Jur. *Evidence* § 661 (2d ed. 1967). *See also State v. Young*, 39 Wn.2d 910, 239 P.2d 858 (1952); *State v. Haverty*, 3 Wn. App. 495, 475 P.2d 887 (1970). The accusation would not have been admissible standing alone, but the defendant made it his own. Thus it was a part of a whole confession of the defendant admissible as an exception to the hearsay rule. The source of the accusation was immaterial, only the reaction thereto being probative. Had the defendant been presented a stone tablet with the accusation thereon or had Audrey Ruud been dead at the time of defendant's trial would have made no difference. His adoption of the words as his own made them proper for consideration. The accusation was not offered as an assertion of the truth of the matters asserted therein but to show what the defendant meant by his reply. Thus it was not hearsay and did not depend upon the credibility of the out-of-court asserter for its value. *See State v. Lane*, 4 Wn. App. 745, 484 P.2d 432 (1971). The statement of Audrey Ruud was not hearsay being adopted by defendant as his own and therefore no purpose would be served by her cross-examination or confrontation by the defendant. *See State v. Nelson*, 65 Wn.2d 189, 192, 396 P.2d 540 (1964). These rules of evidence are unaffected by the requirements of *Miranda* which deals with confessions coerced from a defendant following arrest, not with voluntary reactions exhibited before arrest.

In *Dutton v. Evans, supra* at 88:

Neither a hearsay nor a confrontation question would arise had Shaw's testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements. From the viewpoint of

the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.

(Footnote omitted.)

■ The right of confrontation is a trial right which includes the opportunity of cross-examination and the occasion for the jury to weigh the demeanor of the witness. *Barber v. Page,* 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968). In *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970), the purpose of confrontation is outlined as follows:

Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

(Footnote omitted.)

When the words of the adoptive admission are considered, none of the purposes of confrontation as therein outlined were required to be served since we are not concerned with whether the accusation was made seriously or flippantly, whether it was truthful or untruthful, or how the accusor demeaned herself at the time she made the statement or would have demeaned herself before a jury. The statement was unequivocally adopted by the defendant as his statement.

The trial court refused to permit the defendant to testify as to a conversation he claims he had with Audrey Ruud on the evening of the alleged crime and also refused to allow the defendant to question the court-appointed psychiatrist as to statements made by the defendant to the psychiatrist concerning the history of the events of the crime.

■ The defendant's contention regarding the conversation with Audrey Ruud is answered by *State v. Huff*, 3 Wn. App. 632, 636, 477 P.2d 22 (1970), where it is stated:

> Out-of-court admissions by a party, although hearsay, may be admissible against the party if they are relevant. 5 R. Meisenholder, Wash. Prac. § 421 *et seq.* (1965); C. McCormick, Evidence § 239 (1954). However, if an out-of-court admission by a party is self-serving, in the sense that it tends to aid his case, and is offered for the truth of the matter asserted, then such statement is not admissible under the admission exception to the hearsay rule. *State v. King*, 71 Wn.2d 573, 577, 429 P.2d 914 (1967); *State v. Johnson*, 60 Wn.2d 21, 31, 371 P.2d 611 (1962); 5 R. Meisenholder, Wash. Prac. § 381 at 380 (1965).

The rationale is equally applicable here to the defendant's attempt to offer through his own testimony statements allegedly made by his separately tried codefendant which would be self-serving to him.

■ Counsel states that he wished to have the psychiatrist repeat what the defendant told him about the events on the day of the crime so he could explain his conclusions about the genuineness of the defendant's amnesia. Counsel claims the testimony was not sought for the truth of the matter asserted by defendant (which would have been inadmissible as hearsay, *Smith v. Ernst Hardware Co.*, 61 Wn.2d 75, 377 P.2d 258 (1962)) but as medical history from which professional diagnosis might follow. A physician may relate the history of his patient's symptoms as given him by his patient in order to show a basis for his opinion. *Kain v. Logan*, 79 Wn.2d 524, 487 P.2d 1292 (1971); *Floyd v. Department of Labor & Indus.*, 68 Wn.2d 938, 416 P.2d 355 (1966). It is difficult to tell from the record and the brief if this was sought to substantiate the defendant's story and bolster his credibility or to show lack of intent or to lay a foundation for the doctor's opinion.

The doctor could have testified concerning his examination of the defendant without relating specifically those things which would bring in hearsay. Defense counsel was entitled to question the doctor as to his examination of the

defendant and to have him state his opinion based upon the examination, and this occurred. The doctor was asked if he could distinguish between a person's ability to form an intent while under the influence of alcohol on the one hand and the ability to remember events while under the influence, on the other. The doctor was not sure if he could, but said that he could distinguish between the ability to form an intent when a person is intoxicated and whether the person could remember the transaction. The doctor stated he did not want to imply he knew the defendant's thinking at the time of the crime, but thought a person could be drunk, form an intent to do something and then forget what he had done.

It was then the psychiatrist was asked what the defendant had told him about the evening Knutsen was killed, and this questioning was resisted. Defendant offered to prove through the doctor the history related to the doctor in order that the doctor could make understandable his conclusions in regard to whether or not the defendant had amnesia, and he further intended to ask the doctor his opinion as to whether the defendant had a memory of what happened. The offer of proof was refused.

Following the testimony of the psychiatrist, the defendant took the stand and testified at length concerning his recollection of the happenings in both Seattle and Florida. Defense counsel was not precluded from inquiring of the defendant concerning his memory of the events immediately after they occurred, his memory of them at the time of the examination by the psychiatrist and his memory at the time of trial, nor from asking if he related his recollections to the doctor when he was examined. The testimony of the defendant at the trial reflected a recall of the events and capacity. The opportunity to establish the basis for opinion without imposing the taint of hearsay was available. C. McCormick, Evidence § 14 (E. Cleary 2d ed. 1972). The doctor testified fully as to his conclusions insofar as he was able to reach conclusions.

A doctor may testify following an examination if the

examination reveals to him a basis for the support of his conclusions about the mental condition of the defendant before, during and after the crime, at the time of examination and at the time of trial. He may not express an opinion when there is not evidence on which it can be based. If the candid medical expert cannot state an opinion with reasonable medical certainty because the symptoms before him are insufficient to support an expert opinion, then he may not speculate. *State v. Tyler*, 77 Wn.2d 726, 756, 466 P.2d 120 (1970). Here the doctor testified fully to those opinions that he could reach but went no further. We think the statement in *State v. Farley*, 48 Wn.2d 11, 21, 290 P.2d 987 (1955), *cert. denied*, 352 U.S. 858 (1956), is apropos:

> Accordingly, a layman *who sees the commission of a crime* can describe the acts, the appearance, and demeanor of a defendant, from which inferences as to a defendant's mental processes may be drawn, but a doctor who was not present at a crime has no testimonial knowledge of the circumstances needed to support such inferences. In *State v. Davis*, 6 Wn. (2d) 696, 108 P. (2d) 641, we said:
>
> "The witness [Dr. Rickles], of course, had no personal knowledge concerning the facts of the case, and his opinion on the question of premeditation or the lack of premeditation was inadmissible."

So also is the statement in *State v. Carter*, 5 Wn. App. 802, 490 P.2d 1346 (1971), where the psychiatrist declined to guess about the defendant's mental condition at the time of the commission of the crime, and the court held at page 807:

> We find that the jury would necessarily have had to speculate on the effect which Mr. Carter's particular mental disorder, if present, would have had upon his ability to form an intent to commit the crime charged. There was no testimony to tie the alleged mental condition to the question of ability to form an intent. In the absence of that connecting link, the offer of proof was properly refused.

The overriding impact here was the introduction of self-serving out-of-court statements by the defendant. The evaluation of the testimony of the doctor was not foreclosed to any material extent. The basis for evaluation of the doctor's

testimony was present or available, he testified to his conclusions as far as he could without speculating and while the testimony of the doctor concerning the history related to him by the defendant was admissible the exclusion was harmless error, and the defendant was not prejudiced. *State v. Lucas*, 30 N.J. 37, 79, 152 A.2d 50 (1959).[1]

The defendant claims that both the validity and weight of confessions are jury issues and that the court's instructions permitted the jury to consider confessions contrary to the procedural constitutional requirements of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The function of the court is to rule on the admissibility of a confession; the province of the jury is to weigh and assess its credibility.

CrR 101.20W is divided into four subsections. Subsection (a) specifically sets forth that the concern of the rule is whether the confession was given voluntarily and is therefore admissible. The purpose of the hearing is to allow the court to determine whether coercion was present or absent when the defendant made the incriminating statement. Unless the court can say that the prosecution has met, by a preponderance of the evidence, the burden of showing that the confession was voluntary, the court cannot allow it to be brought before the jury. *State v. Bailey, supra; State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968).[2] In *Lego v. Twomey*, 404 U.S. 477, 489, 30 L. Ed. 2d 618, 92 S. Ct. 619 (1972), it is stated:

> [W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of

---

[1]The trial court forbade testimony by a psychiatrist as to statements made to him by the defendant. "However, the error was not prejudicial. An examination of Dr. Ornsteen's subsequent testimony reveals the ruling did not impede the doctor's ability to fully and adequately convey his diagnostic impressions and opinions."

[2]Compare the footnote to *Lego v. Twomey, supra,* with *State v. Davis, supra,* and Roe, *Quantum of Proof Required in Confessions,* 6 Gonzaga L. Rev. 35 (1970).

the evidence that the confession was voluntary. Of course, the States are free, pursuant to their own law, to adopt a higher standard.

Subsection (b) of the rule spells out for the trial judge his duty of informing the defendant of his situation during the CrR 101.20W hearing before the judge and the effect his testifying in the course of the hearing will have on his position throughout the trial before the jury.

Subsection (c) deals with the trial judge's duty to make a record of the undisputed and disputed facts and his conclusions therefrom so his ruling on admissibility may be reviewed.

Subsection (d) sets forth the standing of the defendant if the confession is admitted. It allows the defendant to attack the reliability of the confession in any relevant manner subject to the usual rules of evidence. If, indeed, the defendant wishes to attempt to convince the jury that the confession was forced from him he may do so, but the confession has been admitted as evidence at that stage. As was said in *State v. Lanning*, 5 Wn. App. 426, 439, 487 P.2d 785 (1971):

> Finally, appellant claims he should have been permitted to present to the jury the issue of whether or not he knowingly and intelligently waived his constitutional right against self-incrimination and his right to have the assistance of counsel prior to any questioning. In effect, appellant seeks to resubmit the question determined by the court in the CrR 101.20W hearing regarding the admissibility of the statements made by him to the sheriff's deputies. Such is not the law in the state of Washington. Whether the appellant was properly advised of his constitutional rights and whether or not a knowing waiver was given pursuant to the applicable rules is a question of law to be determined by the court. Of course, all of the circumstances surrounding the giving of the statements, and all other matters of evidence that bear upon the voluntariness of the statements, may be presented to the jury.

Whatever else is brought before the jury as evidence concerning the confession goes to weight and credibility,

not admissibility. As said in *State v. Aiken,* 72 Wn.2d 306, 344, 434 P.2d 10 (1967), *vacated,* 392 U.S. 652, 20 L. Ed. 2d 1357, 88 S. Ct. 2302 (1968):

[I]f the trial court has found the confession to be voluntary as a matter of law, and admissibility is not precluded by an exclusionary rule affecting the defendant's procedural safeguards, . . . the jury may redetermine the question of voluntariness as a matter of fact, as it relates to the weight and credibility to be given the confession. The jury may not, however, disregard a confession by measuring it against the foregoing legal tests of due process and reject the confession, as a judge would, if the tests are not fulfilled.

(Citations omitted.)

The court's instruction No. 28 read:

"Admissions or confessions made by a defendant charged with crime, when such admissions or confessions are not caused by duress or fear produced by threats, are to be considered by the jury in connection with all the other evidence in the case in determining the guilt or innocence of the accused, and their weight as evidence, like that of any other fact, is to be determined by you alone. If you find that any such admissions or confessions have been made in this case, you have a right, in weighing such testimony, to consider all facts and circumstances connected therewith, together with the defendant's interest, if any, in the transaction, and his knowledge, if he had any, of the circumstances surrounding the same, and all other circumstances which may throw any light upon or aid you in weighing such testimony."

The instruction, taken from *State v. Lew,* 26 Wn.2d 394, 401, 174 P.2d 291 (1946), appropriately and properly guided the consideration of the confession.

The defendant claims that the statement in *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970), approving an instruction which required "the jury to find beyond a reasonable doubt that there was a valid waiver and voluntary confession" establishes a requirement that the jury make such a finding. The case does not establish that requirement and such a rule would be counter to the format of CrR 101.20W. While the instruction found not erroneous in that

case so stated, it was not necessary for the jury to rule on admissibility. *Lego v. Twomey, supra; State v. Aiken,* 72 Wn.2d 306, 434 P.2d 10 (1967), *vacated* (on other grounds), 392 U.S. 652, 20 L. Ed. 2d 1357, 88 S. Ct. 2302 (1968). The defendant in *State v. Jones, supra,* received a double review of whether the confession should be considered at all. He was not entitled to the second plowing of the same ground, but having received it he was not harmed. The instruction therein approved did set before the jury the question of voluntariness which is a proper consideration along with all other evidence bearing upon what weight, if any, the confession shall be given. It is not imperative that every item of evidence be proven beyond a reasonable doubt. The requisite is that each and every element of the crime be proven beyond a reasonable doubt. *State v. Renhard,* 71 Wn.2d 670, 430 P.2d 557 (1967); RCW 10.58.020.

There was substantial evidence and inferences to be drawn therefrom to support a finding that the defendant killed Karsten Knutsen while engaged in committing, attempting to commit or withdrawing from the scene of a robbery, the defendant being charged under RCW 9.48.030(3). Therefore, it was appropriate to submit the case to the jury on instructions which would enable them to find the defendant guilty of murder in the first degree. *State v. Brooks,* 73 Wn.2d 653, 440 P.2d 199 (1968).

During the initial part of the prosecutor's closing statement he argued:

This was a preconceived plan. We know they were broke when they came back from Las Vegas. They got married even though he was already married. Robbery was not new or the handling of a gun. This was handled before and he was convicted of robbery.

Mr. Paul: I move for a mistrial.

The Court: That is improper. Disregard that argument.

Mr. Paul: Will the court rule on my motion?

The Court: Motion denied.

The statement by the deputy prosecutor brought out that the defendant had been convicted of robbery and

his familiarity with guns. The trial court immediately corrected the prosecutor, noted that the argument was improper and instructed the jury to disregard it. Defense counsel, on direct examination, brought out that the defendant had been convicted of robbery; and on cross-examination, the defendant admitted he had used a gun in that robbery. In closing argument, the prosecutor may refer to the prior convictions of a defendant if he has taken the stand, and the prior convictions have been brought out to impeach his credibility. *State v. Harrison,* 72 Wn.2d 737, 435 P.2d 547 (1967).

Argument which misrepresents evidence and will mislead the jury is reversible error if the argument would implant the misstatements in the minds of the jury and prejudice a fair trial. If, in such a situation, there is no correction of the misrepresentations, a new trial must be granted. *See State v. Eichman,* 69 Wn.2d 327, 418 P.2d 418 (1966); *State v. Reeder,* 46 Wn.2d 888, 285 P.2d 884 (1955). The statement was an improper use of the evidence in the record of the defendant's prior robbery conviction in that it inferred it likely the defendant committed the crime charged rather than attacking his credibility. However the misuse was not a misrepresentation.

The criteria for evaluating misconduct of counsel in argument are found in *State v. Hart,* 26 Wn.2d 776, 795, 175 P.2d 944 (1946), wherein it was stated:

> In judging of what constitutes misconduct, each case involving such question must stand by itself and must be considered in the light of all its particular facts and circumstances, to the end that verdicts properly arrived at shall not be disturbed and that those verdicts which have been induced by prejudice or by something beyond the issues shall not stand. [Citation omitted.]

and in *State v. Brown,* 35 Wn.2d 379, 386, 213 P.2d 305 (1949), we find:

> We have held that, while intemperate assertions of opinion not based upon evidence will not be tolerated, prosecuting officers will be permitted a reasonable latitude in argumentative deduction from the evidence. *State*

*v. Peeples,* 71 Wash. 451, 129 Pac. 108. In *State v. Evans,* 145 Wash. 4, 258 Pac. 845, we held it not to be misconduct for the prosecuting attorney to refer to the defendant as a "red-handed murderer," saying that it was a conclusion which could be legitimately drawn from the evidence. In *State v. Buttry,* 199 Wash. 228, 90 P. (2d) 1026, we held it not prejudicial, in a murder trial, to call the defendant a vicious killer, saying that if the evidence indicated he was a murderer or killer, it was not prejudicial to so designate him.

The trial court must be given an opportunity to correct error and failure to afford the trial court this opportunity constitutes a waiver of the right to assert the error on appeal. In this case, the error was called to the court's attention and was corrected by the court immediately and also in the court's written instructions.[3]

The final consideration is whether the misconduct was of such a flagrant or prejudicial nature that any curative measure would have been futile. *State v. Van Auken,* 77 Wn.2d 136, 460 P.2d 277 (1969).

*State v. Music,* 79 Wn.2d 699, 714, 489 P.2d 159 (1971), said:

> We must conclude that the prosecutor's above-described comments and actions constituted highly improper, totally unwarranted and clearly unprofessional conduct. . . .
>
> However, it is not dispositive to conclude that the prosecutor's remarks were improper. The question to be resolved is whether there is a substantial likelihood that such questions affected the jury's verdict and, thus, deprived the appellant of his right to a fair and impartial trial. Viewed in this perspective, we are unable to conclude that the questions had the probable effect of swaying the jury's verdict.
>
> . . . Viewed in the proper perspective of the entire record, we must conclude that the prosecutor's actions—although improper—did not result in prejudicial error.

[3]"Under the law of this state, the fact that a defendant has previously been convicted of a crime is not of itself any evidence of his guilt in this case. It is, however, a circumstance which may be weighed and considered by you in the determination of what weight or credibility should be allowed his testimony as a witness in this case."

390

When we consider that there was an objection and the court called the argument improper and instructed the jury to disregard it, that the subject matter of the argument was supported by the record, the error could be corrected and, having been corrected, was harmless beyond a reasonable doubt. We conclude the improper argument did not prejudice the consideration of the jury nor deprive the defendant of a fair trial. *State v. Estill,* 80 Wn.2d 196, 492 P.2d 1037 (1972); *State v. Basford,* 76 Wn.2d 522, 457 P.2d 1010 (1969); *State v. Dennison,* 72 Wn.2d 842, 435 P.2d 526 (1967); *State v. Temple,* 5 Wn. App. 1, 485 P.2d 93 (1971).

The judgment is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied September 6, 1972.

Review denied by Supreme Court October 26, 1972.