IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35312-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN T. MELLGREN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| DAMIAN C. DUNIGAN, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

FEARING, J. — In *State v. Vangerpen*, 125 Wn.2d 782, 888 P.2d 1177 (1995), the Washington Supreme Court adjudged a charging information as constitutionally defective because the charge of attempted first degree murder did not employ the term "premeditation" when the State relied on RCW 9A.32.030(1)(a) as the predicate for first degree murder. *Vangerpen* controls this appeal. Therefore, we vacate John Mellgren's conviction for attempted first degree murder, and we dismiss the charge without prejudice. The State omitted from the Mellgren's information the word "premeditation."

FACTS

The outcome of this appeal depends on procedural facts rather than facts of the underlying crime. The crime entails the severe beating of Robert Schreiber with an aluminum baseball bat on October 8, 2016 outside the Grove Apartments in Cheney. Three men, including John Mellgren, participated in the assault.

During the night and early morning of October 7 and 8, victim Robert Schreiber and friends played games and consumed alcohol in an apartment at the Grove Apartments, in which Schreiber resided with others. For an unknown reason, Schreiber grew angry, stormed into his bedroom, and locked the door. Shortly thereafter, Schreiber jumped from his bedroom window and chased a car through the parking lot at the Grove Apartments. When the car stopped, Schreiber jumped on the car and smashed his knee through the back window. The driver of the car placed the transmission in reverse. Schreiber then jumped to the front of the car and off the car.

Three men inside the car, John Mellgren, Damian Dunigan, and Josh Sonnabend, exited the vehicle and gave chase to Robert Schreiber. The three tackled Schreiber to the ground and then punched and kicked him, while Schreiber placed his hand over his head. Mellgren held a baseball bat in his hands and struck Schreiber in the head with the bat as Schreiber laid in a fetal position. According to one witness, Mellgren angrily swung the bat as if "chopping wood" while striking Schreiber four to six times in the head with the

2

bat. Report of Proceedings at 271, 295, 571. Mellgren and the others exclaimed they were beating Schreiber because of the damage to Mellgren's car's rear window.

Paramedics transported Robert Schreiber to the hospital. The emergency room doctor determined Schreiber suffered potentially lethal injuries, including bleeding between the brain and the skull. If Schreiber did not receive medical care that night, he likely would have perished.

The car with the broken rear window remained in the parking lot after the assault, and police identified John Mellgren as the registered owner. Police impounded and searched the vehicle pursuant to a search warrant. The following morning on October 8, Cheney Police interviewed Mellgren and collected a deoxyribonucleic acid (DNA) sample. Officers seized two baseball bats from the trunk of Mellgren's car. Each bat contained blood splotches.

Five days later, officers arrested Mellgren and seized his shoes, which also contained blood stains. Law enforcement submitted DNA swabs from Mellgren, Mellgren's shoes, the bats, and Robert Schreiber to the Washington State Patrol Crime Laboratory. Police took no DNA samples from Damian Dunigan or Josh Sonnabend. A Washington State Patrol DNA scientist determined Schreiber to be the major contributor of the blood stains on Mellgren's shoes and on one of the bats.

PROCEDURE

The State of Washington filed an information on October 14, 2016, charging John

Mellgren with attempted murder in the first degree by means of extreme indifference,

with a deadly weapon enhancement. On March 31, 2017, the State filed an amended

information that added a second count of first degree assault with a deadly weapon

enhancement. The amended information also changed the attempted murder charge from

being committed by means of extreme indifference to having involved premeditation.

The amended charge read:

> COUNT I: ATTEMPTED MURDER IN THE FIRST DEGREE,
> committed as follows: That the defendant, JOHN T. MELLGREN and
> DAMIAN C. DUNIGAN JR, as actors and/or accomplices, in the State of
> Washington, on or about October 08, 2016, with the intent to commit the
> crime of MURDER IN THE FIRST DEGREE as set out in RCW
> 9A.32.030(1)(a), committed an act which was a substantial step toward that
> crime, by attempting to cause the death of ROBERT SCHREIBER, a
> human being, and the defendants, as actors and/or accomplices, being at
> said time armed with a deadly weapon other than a firearm under the
> provisions of RCW 9.94A.825 and 9.94A.533(4),
> COUNT II: FIRST DEGREE ASSAULT, committed as follows:
> That the defendant, JOHN T. MELLGREN and DAMIAN C. DUNIGAN
> JR, as actors and/or accomplices, in the State of Washington, on or about
> October 08,2016, did, with intent to inflict great bodily harm, intentionally
> assault ROBERT SCHREIBER, with a deadly weapon, or by any force or
> means likely to produce great bodily harm or death, to-wit: a metal bat, and
> the defendants, as actors and/or accomplices, being at said time armed with
> a deadly weapon other than a firearm under the provisions of RCW
> 9.94A.825 and 9.94A.533(4)[.]

Clerk's Papers (CP) at 72-73. Note that count one in the information cites RCW

9A.32.030(1)(a), the subsection of the homicide statute that references first degree

4

murder by premeditation. Nevertheless, the charge does not expressly mention attempted murder "with premeditation."

John Mellgren never challenged, before trial, the sufficiency of the information. At the conclusion of trial, a jury found Mellgren guilty of both offenses.

The State filed a sentencing brief arguing that Counts I and II constitute the same course of conduct and merged for sentencing purposes. At the time of sentencing, the trial court merged the first degree assault into the attempted first degree murder offense.

LAW AND ANALYSIS

Charging Information

On appeal, John Mellgren challenges the sufficiency of the charging information for attempted first degree murder. He argues that the information failed because it did not employ the word "premeditation." We agree.

We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). A challenge to the sufficiency of a charging document is of constitutional magnitude and may be raised for the first time on appeal. *State v. Campbell*, 125 Wn.2d 797, 801, 888 P.2d 1185 (1995).

The State must include all essential elements of a crime in the charging document in order to give notice to an accused of the nature and cause of the accusation against him. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). An "essential element" is one whose specification is necessary to establish the very illegality of the

5

behavior charged. *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003). When the defendant challenges, as here, the sufficiency of the information for the first time on appeal, the court liberally construes the information and analyzes whether the necessary facts appear in any form or by fair construction can be found in the charging document. *State v. Kjorsvik*, 117 Wn.2d 93, 105, 812 P.2d 86 (1991).

In liberally construing a charging document, courts employ a two-pronged test established in *State v. Kjorsvik*: (1) do the necessary elements appear in any form or by fair construction on the face of the document, and, if so, (2) whether the defendant can show he or she was actually prejudiced by the unartful language. *State v. Zillyette*, 178 Wn.2d at 162; *State v. Kjorsvik*, 117 Wn.2d at 105-06. If the State does not satisfy the first prong, the court presumes prejudice and reverses the conviction. *State v. Zillyette*, 178 Wn.2d at 162. If the information cannot be construed to give notice of the essential elements of a crime, the most liberal reading cannot cure it. *State v. Zillyette*, 178 Wn.2d at 162; *State v. Moavenzadeh*, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998).

RCW 9A.32.030(1) lists three alternative means by which an accused may commit the crime of first degree murder. Those means include with premeditated intent, under circumstances manifesting extreme indifference to life, and during the course of one of many enumerated felonies. RCW 9A.32.030(1)(a) lists premeditated intent.

To repeat, the amended information against John Mellgren alleged he committed attempted first degree murder as "set out in RCW 9A.32.030(1)(a)," without uttering the

6

word "premeditation." Based on this omission, we find *State v. Vangerpen*, 125 Wn.2d

782 (1995) controlling.

In *State v. Vangerpen*, the State charged Shane Vangerpen with attempted first

degree murder because he reached for his loaded gun during a traffic stop in an attempt to

shoot an officer. The charging document cited to the statute defining the crime. The

prosecution, however, inadvertently omitted the term "premeditation." The Supreme

Court found premeditation to be an essential element of the crime, reversed the

conviction, and dismissed the charges without prejudice due to the omission of

premeditation from the information. Presumably citing the statutory subsection that

contains the essential element is insufficient.

The State argues that the element of premeditation can be implied on the face of

the amended information. According to *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d

250 (2010), when a defendant challenges the information for the first time on appeal, we

read the information as a whole, according to common sense, and including facts that are

implied to see if the language reasonably apprised an accused of the elements of the

crime charged. Accordingly, even missing elements may be implied if the language

supports such a result. *State v. Hopper*, 118 Wn.2d 151, 156, 822 P.2d 775 (1992).

When reading the information against John Mellgren as a whole and without

reading the statutory subsection cited for first degree murder, the language does not imply

that Mellgren acted with premeditation. The information contains elements of "attempt,"

7

such as the substantial step requirement, but the charging document fails to set forth the essential element of premeditation.

The State asks this court to read the information liberally and infer that the charge provides notice that attempting to kill another with a bat requires premeditation. Nevertheless, count 1, the charge of attempted first degree murder, does not mention use of a bat. Only count 2 mentions the bat. Also premeditation, let alone intent to murder, does not necessarily follow from use of a bat.

The State next asks us to accept a jury instruction as sufficient to give notice to John Mellgren of a charge of attempt at premeditated murder. Instruction No. 15 stated: "a person commits the crime of murder in the first degree when, with a premeditated intent to cause death of another person, he or she causes the death of such person . . . ." CP at 202. In *State v. Vangerpen*, 125 Wn.2d 782 (1995), the State also noted that the instructions properly instructed the jury on all elements of the crime of attempted murder in the first degree. Yet, the Supreme Court ruled that proper jury instructions cannot cure a defective information because instructions and charging documents serve entirely different functions.

The State asks us to hold premeditation not to be an essential element for purposes of an "attempt" to commit first degree murder. In forwarding this argument, the State relies on *State v. Boswell*, 185 Wn. App. 321, 337, 340 P.3d 971 (2014) and *State v. Besabe*, 166 Wn. App. 872, 883, 271 P.3d 387 (2012). In each decision, the to-convict

jury instruction for attempted first degree murder omitted premeditated intent as an essential element of the crime charged. In each case, this court held that an instruction on attempt is not defective for failing to include the essential elements of the attempted underlying crime. Since the State did not charge the respective defendants with the completed crime of first degree murder, the jury instruction did not need to refer to premeditation.

We recognize that a charging information and a jury instruction serve discrete functions. Nevertheless, we cannot intellectually distinguish between premeditation being an essential element of attempted first degree murder for purposes of a charging information and premeditation not being an essential element of attempted first degree murder for purposes of a jury instruction. Nevertheless, we deem ourselves bound to follow *State v. Vangerpen* because our Supreme Court issued the decision and because *Vangerpen* entails the charging document.

## Remedy

John Mellgren asks us to reverse and dismiss the conviction of attempted first degree murder with prejudice. We instead follow precedent and dismiss the attempt charge without prejudice to refile. When an information wholly omits an element, the remedy is to reverse the conviction and dismiss the charge without prejudice to the State's refiling the charge. *State v. Brown*, 169 Wn.2d 195, 198, 234 P.3d 212 (2010).

9

John Mellgren contends that count I and count II constitute the "same criminal conduct" and thus a reversal of his attempted first degree murder conviction cannot result in a retrial. In support of this argument, Mellgren cites to *State v. Womac*, 160 Wn.2d 643, 160 P.3d 40 (2007) as authority regarding a double jeopardy issue. *Womac* lacks relevance. Our state and the federal constitution permit retrial after a conviction is reversed due to a defect in a charging document. *Montana v. Hall*, 481 U.S. 400, 404, 107 S. Ct. 1825, 95 L. Ed. 2d 354 (1987); *City of Auburn v. Brooke*, 119 Wn.2d 623, 639, 836 P.2d 212 (1992).

## Statement of Additional Grounds

John Mellgren asserts four assignments of error in his statement of additional grounds. Mellgren first assigns error to the identification process during a photo montage presented to eyewitnesses of the assault. Mellgren asserts law enforcement violated his due process rights because law enforcement did not inform his attorney when detectives conducted the montage. The law regarding photo identification provides: "the showing of photographs to a witness or victim of a crime is not a 'critical stage' of a criminal proceeding requiring the presence of counsel under the [S]ixth [A]mendment to the United States Constitution, even if the defendant has been arrested and charged with the crime." *State v. Nettles*, 81 Wn.2d 205, 207, 500 P.2d 752 (1972). Thus, no violation of Mellgren's due process rights occurred.

10

John Mellgren's second additional ground refers to a police report by Captain Beghtol. This report lies outside the record on review, so this court will not reach the underlying merits of the argument. Only documents found in the record should be referred to in a statement of additional grounds for review. RAP 10.10(c).

John Mellgren next suggests that the lead investigator in this case ignored leads of potential suspects. Mellgren claims this omission led to a denial of his right to an impartial and complete investigation under the due process clause. Nevertheless, the due process clause of the Sixth Amendment does not create a right to an impartial and complete investigation. A review of the record shows that the Cheney Police Department gathered ample evidence to develop probable cause to arrest Mellgren.

Finally, John Mellgren claims a speedy trial violation. Mellgren blames his attorney for failing to make the speedy trial "happen." Again, Mellgren's contention is based in part on facts outside the record. The record before us extinguishes such a claim.

The constitutional right to a speedy trial is measured by four standards: (1) a delay of such length alone as to amount to a denial of the right to a speedy trial, (2) prejudice to the defense arising from the delay, (3) a purposeful delay designed by the state to oppress the defendant, or (4) long and undue imprisonment in jail awaiting trial. *State v. Ruud*, 6 Wn. App. 57, 59, 491 P.2d 1351 (1971). The record fails to reveal the presence of any of the four factors. The State filed an information on October 14, 2016 and brought the case to trial on April 10, 2017, roughly six months after filing the information. Such a delay,

standing alone, does not show the denial of a right to a speedy trial. *State v. Ruud*, 6 Wn. App. at 59-60. Mellgren grounds his claim of prejudice on an unfounded assertion that the trial court granted a trial continuance in January 2017, under false pretenses in an attempt to increase the prosecution's chances of convicting him. Prejudice must be specific and demonstrated, not based on speculation. Moreover, the delay must have impaired the preparation of the defense. Mellgren does not argue any impairment.

The record shows no purposeful delay by the State. Continuances were granted until the commencement of trial for the purposes of continued discovery. Mellgren contends that the State gathered all of its evidence by the end of December 2016, yet asked for continuances for more time to build its case against him. The record does not support these factual assertions. Finally, the six-month incarceration does not constitute long and undue imprisonment sufficient to support a conclusion that the State denied Mellgren's right to a speedy trial. Mellgren cites no authority holding that a six-month delay between filing and trial denies one a speedy trial.

## CONCLUSION

We reverse the conviction of John Mellgren for attempted first degree murder without prejudice to the State to refile charges.

No. 35312-5-III
*State v. Mellgren*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Siddoway, J.

13

No. 35312-5-III

KORSMO, J. (concurring) — Although I agree with the majority that *Vangerpen*[1] compels this result, I briefly write separately to stress two points. First, this result is at odds with the stated purpose of the essential elements doctrine. Second, this outcome will result in the first degree assault conviction being reinstated.

The theoretical purpose of the essential elements rule under the Washington Constitution is to ensure that a defendant has notice of the charges against him in order to prepare a defense at trial. *E.g., State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). That purpose is not served by allowing a posttrial challenge to the charging document in the absence of contemporaneous evidence that the defendant did not know what charge he was facing at trial. A defendant who is aware of the charge he is defending against simply is not in a position to argue that he was prejudiced by the inartful drafting of the charging document.[2]

---

[1] *State v. Vangerpen*, 125 Wn.2d 782, 888 P.2d 1177 (1995).

[2] It would be a different circumstance if the charging document needed to accurately state a crime in order to convey subject matter jurisdiction to the trial court, but that is not a concern of the essential elements rule in this state. Of course, an attempt to file a nonexistent charge such as first degree criminal stupidity or aggravated mopery, would lead to an easy and early dismissal of charges, but merely filing a poorly pleaded charging document that names a genuine crime does not deprive the superior court of subject matter jurisdiction, as demonstrated by this case (and most of the other cases cited in this opinion).

That is one of the reasons that the federal courts permit notice to be given by a variety of other means. *See, e.g., Murtishaw v. Woodford*, 255 F.3d 926, 954 (9th Cir. 2001) (even though felony murder charge was not included in charging document opening statement, evidence presented at trial, cross-examination of defendant, and request for jury instruction gave defendant adequate notice of charge); *Sheppard v. Rees*, 909 F.2d 1234, 1236 n.2 (9th Cir. 1989) (recognizing that notice could be provided by a complaint, an arrest warrant, a bill of particulars, or a preliminary hearing). As the Ninth Circuit once summed it up: "An indictment is constitutionally adequate so long as it puts a defendant on notice of the charges against him, even though it does not catalog every element of the offense." *Coronel v. Oku*, 29 F.3d 631 (9th Cir. 1994).

Given that the purpose of our essential elements rule is to provide notice, evidence of actual notice should be considered when a postjudgment attack on a charging document is considered. It also does not appear that manifest constitutional error exists under RAP 2.5(a) absent evidence that the defendant was not alerted to the crime he was defending against. However, since our precedent requires otherwise, I agree that the attempted murder conviction needs to be reversed.

That conclusion leads to another problem that is not fully addressed by the majority nor correctly addressed by the appellant. The first degree assault conviction was merged into a now nonexistent crime. As a result, the merger ruling now is without legal

2

or factual basis and must be reinstated, a conclusion that Mr. Mellgren agrees with.[3] He, however, thinks that the result is to preclude a retrial on the attempted murder charge. I disagree.

The doctrine of continuing jeopardy allows retrial of the attempted murder charge since Mr. Mellgren successfully appealed that conviction. *State v. Ervin*, 158 Wn.2d 746, 757-759, 147 P.3d 567 (2006). In the event that he is again convicted of that charge, he would again be entitled to merge the existing first degree assault conviction into the attempted murder charge. *State v. Weber*, 159 Wn.2d 252, 265, 269, 149 P.3d 646 (2006).

In the event that the State does not desire to pursue the attempted murder charge, the trial court only need sentence Mr. Mellgren on the first degree assault. Or, perhaps, in light of the trial court's imposition of an exceptional mitigated sentence, the parties will agree on a sentence recommendation that precludes the need for a retrial on the greater offense.

In short, there are several possibilities out there. The argument Mr. Mellgren makes, however, is not one of them.

With these observations, I respectfully concur in the judgment of the court.

_____
Korsmo, J.

_____

[3] *See, e.g., State v. Schwab*, 163 Wn.2d 664, 185 P.3d 1151 (2008); *State v. Ward*, 125 Wn. App. 138, 104 P.3d 61 (2005).