# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73026-6-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| JASON MAURICE BENSON, | ) | UNPUBLISHED |
| Appellant. | ) | FILED: May 31, 2016 |

COX, J. — Jason Benson appeals his judgment and sentence based on a jury verdict of guilty on the charge of third degree assault of a police officer. The bailiff's improper communication with the jury during its deliberations was harmless beyond a reasonable doubt. The trial court's failure to notify counsel of the bailiff's improper communication was also harmless. The court did not abuse its discretion in denying Benson's motion for a new trial.

The court also did not abuse its discretion in denying his motion for a mistrial. This motion was based on statements about "assault" made by two testifying witnesses during trial, in violation of an order in limine.

Finally, there was neither prosecutorial misconduct nor cumulative error warranting reversal. We affirm.

In November 2012, Jason Benson called 911 after his son became ill from drinking. Benson was heavily intoxicated. After police deputies Mulligan and

Fitchett arrived, Benson and the deputies argued. What followed was disputed at trial.

Deputy Fitchett testified that Benson walked towards Deputy Mulligan and "hit Deputy Mulligan like in the chest, shoulder area, knocking him back as he pas[sed]." Deputy Mulligan testified that Benson "shoulder checked" him by "toss[ing]" his shoulder into him.

The deputies also testified that they had to subdue Benson with stun guns during a struggle with him. Deputy Fitchett testified that he saw "Benson grab on to Deputy Mulligan's TASER" and saw Benson "rip it out of Mulligan's hands." Deputy Mulligan also testified, in detail, how Benson took the stun gun away from him.

Another witness to this incident, Drew Galas, testified that Benson was verbally confrontational, but never charged at the deputies. The defense theory at trial was that the deputies fabricated their accounts to justify their excessive use of force against Benson.[1]

Benson was charged with disarming (Count I) and assaulting (Count II) Deputy Mulligan. The jury found Benson guilty of both charges.

Thereafter, some of the jury members provided declarations to the defense regarding their recollections of communications with the bailiff during their deliberations. Based on these declarations and other information, Benson moved for a new trial. After conducting an evidentiary hearing, the trial court denied his motion. It also entered its judgment and sentence on all verdicts.

Benson appeals.

---

[1] Brief of Appellant at 5.

2

## MOTION FOR NEW TRIAL

Benson argues that the trial court abused its discretion by denying his motion for a new trial. Because he was not denied a fair trial, we disagree.

A defendant's right to a fair trial is secured by both the Washington and United States constitutions.[2] But the right to a fair trial does not guarantee a trial free from error.[3]

CrR 7.5(a)(5) provides that a trial court may grant a new trial if an "[i]rregularity in the proceedings of the court, jury or prosecution" prevented the defendant from having a fair trial. CrR 7.8(b)(1) similarly states that a trial court may relieve a party from a final judgment due to an "[i]rregularity in obtaining a judgment."

We review for abuse of discretion a trial court's denial of a new trial and denial of relief from judgment.[4] "A trial court abuses its discretion when its 'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'"[5]

*Bailiff's Communication with Jury*

Benson first argues that the bailiff's communication with the jury during deliberations and in his absence was improper and deprived him of his right to a

---

[2] State v. Hecht, 179 Wn. App. 497, 503, 319 P.3d 836 (2014).

[3] State v. Fisher, 165 Wn.2d 727, 746-47, 202 P.3d 937 (2009).

[4] See State v. Hawkins, 181 Wn.2d 170, 180, 332 P.3d 408 (2014); In re Cadwallader, 155 Wn.2d 867, 879-80, 123 P.3d 456 (2005).

[5] Hundtofte v. Encarnacion, 181 Wn.2d 1, 6-7, 330 P.3d 168 (2014) (plurality opinion) (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

fair trial. We agree that the communication was improper. But we disagree that he was denied a fair trial.

Generally, neither a trial judge nor his or her bailiff should communicate with a jury in the absence of the defendant.[6] If such ex parte communication occurs, a trial judge generally should disclose the communication to counsel.[7]

The supreme court has stated that "improper communication between the court and the jury is an error of constitutional dimensions."[8] Thus, "Once a defendant raises the possibility that he or she was prejudiced by an improper communication between the court and jury, the State bears the burden of showing that the error was harmless beyond a reasonable doubt."[9]

But a court's response to a jury inquiry, without notifying counsel, is generally harmless if it conveyed no affirmative information.[10] For example, a court's response to jury questions telling the jury to refer to its instructions is generally harmless error.[11]

RCW 4.44.300 further defines the scope of prohibited communication between a bailiff and a jury during its deliberations. This statute provides that the

---

[6] State v. Bourgeois, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997).

[7] Id.

[8] Id.

[9] Id.

[10] State v. Besabe, 166 Wn. App. 872, 882, 271 P.3d 387 (2012).

[11] See id.; State v. Jasper, 158 Wn. App. 518, 542-43, 245 P.3d 228 (2010), aff'd, 174 Wn.2d 96, 271 P.3d 876 (2012); State v. Stein, 140 Wn. App. 43, 70, 165 P.3d 16 (2007); State v. Allen, 50 Wn. App. 412, 419-20, 749 P.2d 702 (1988); State v. Langdon, 42 Wn. App. 715, 717-18, 713 P.2d 120 (1986); State v. Russell, 25 Wn. App. 933, 948, 611 P.2d 1320 (1980).

bailiff shall not communicate with the jury during deliberations, except to ask if they have reached a verdict. "[T]his does not preclude innocuous or neutral statements" and "forbids only communications that could possibly influence deliberations."[12] Bailiff statements that do not "define or explain an instruction" or "inform the jury on a point of law" are not prejudicial.[13]

Examples of improper communication between a bailiff and jury, resulting in prejudicial error, include a bailiff's inquiry as to how deliberations were proceeding and suggestions for making the process run more smoothly.[14] Likewise, a bailiff's "comments about the effects of a failure to agree and the impracticability of reconvening court to consider further instructions" is also improper.[15] Moreover, a bailiff's statement that "hasten[s] the jury's verdict" is improper.[16]

CrR 6.15(f)(1) governs jury instructions and requires that the jury submit written questions to the bailiff.

Here, the defense team interviewed jurors after the verdicts and learned of the jury's improper communications with the bailiff during deliberations. Benson then moved for a new trial based on juror declarations obtained during these interviews.

---

[12] State v. Yonker, 133 Wn. App. 627, 635-36, 137 P.3d 888 (2006).

[13] Russell, 25 Wn. App. at 948.

[14] State v. Johnson, 125 Wn. App. 443, 461, 105 P.3d 85 (2005).

[15] State v. Christensen, 17 Wn. App. 922, 925, 567 P.2d 654 (1977).

[16] State v. Crowell, 92 Wn.2d 143, 147-48, 594 P.2d 905 (1979).

The court conducted a hearing at which the bailiff testified. The court also considered the juror declarations and arguments of counsel.

Defense counsel examined the bailiff as follows:

[Defense counsel]: Okay. And during—after the case was sent to the jury, did you have any interactions with the jury members during their deliberations?

[Bailiff]: Yes.

[Defense counsel]: And can you please describe those interactions?

[Bailiff]: About a few hours into their deliberation I got a call from the jury and went in to the jury room and they had a question for Judge McCullough and the attorneys. And my response to them was, [t]he Judge cannot answer that question but I will give him the question anyway. At which time the presiding juror decided—she said, No, we won't use this question, then.

[Defense counsel]: And when you said that they had a question, do you—was that question written out or was it an oral question that they presented to you?

[Bailiff]: It was a written question.

[Defense counsel]: Do you remember what that question said?

[Bailiff]: Vaguely, but it—it pertained—it was a question regarding Count II.

[Defense counsel]: And was that the Assault in the Third Degree?

[Bailiff]: Yes, they wanted to know which incident was the charge based on.

[Defense counsel]: And did the presiding juror actually hand you the written question?

[Bailiff]: She did and then she took it back.

[Defense counsel]: And then she took it back from you. And after she took that question back from you, what did you do?

[Bailiff]: I reassured her that I could give this to the Judge and she said, No, we'll just—we'll just move on.[17]

The declaration of the presiding juror with whom the bailiff dealt stated her recollections as follows:

We posed a question to the bailiff in writing, about what should be considered as the assault, and were told that the judge would most likely not answer and that we needed to focus on the instructions.[18]

The trial court decided that the bailiff's communication to the jury was improper but harmless. The State concedes on appeal that the communication was improper and also argues that it was harmless. We agree.

Here, the bailiff's response was "innocuous or neutral" and did not provide "affirmative information" to the jury.[19] The bailiff's response did not "define or explain" the instruction or "inform the jury on a point of law."[20] It is difficult for us to see how the trial judge's response to the jury's question, had the trial court given one, would have been substantially different from what the bailiff said. The improper communication was harmless beyond a reasonable doubt. Thus, the court did not abuse its discretion in denying the new trial motion on this basis.

---

[17] Report of Proceedings Vol. 5 (January 16, 2015) at 721-23.

[18] Clerk's Papers at 69-70.

[19] Besabe, 166 Wn. App. at 882; Yonker, 133 Wn. App. at 635-36.

[20] Russell, 25 Wn. App. at 948.

### No Notification by Judge of Bailiff's Communication with Jury

Benson relies heavily on his next argument. He argues that the failure to notify counsel of the bailiff's improper communication with the jury also deprived him of his right to a fair trial. We agree that this failure was improper. But we disagree that Benson was denied a fair trial because of this failure.

CrR 6.15(f)(1) is quite clear on the procedure to be followed under the circumstances of this case. It states:

> The court shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record. The court shall respond to all questions from a deliberating jury in open court or in writing.[21]

The first sentence of this provision is at issue. The court did not notify counsel of the jury's written question. But a court's response to a jury inquiry, without notifying counsel, is generally harmless if it conveyed no affirmative information.[22]

As previously stated, a court's response to jury questions telling the jury to refer to its instructions is generally harmless error.[23] Court statements that are neutral are not prejudicial.[24]

---

[21] CrR 6.15(f)(1).

[22] Besabe, 166 Wn. App. at 882.

[23] See id.; Jasper, 158 Wn. App. at 542-43; Stein, 140 Wn. App. at 70; Allen, 50 Wn. App. at 419-20; Langdon, 42 Wn. App. at 717-18; Russell, 25 Wn. App. at 948.

[24] Yonker, 133 Wn. App. at 635; see also Russell, 25 Wn. App. at 948.

Benson does not argue that the bailiff's response lacked neutrality. Likewise, he does not argue that the response conveyed any affirmative information.

Rather, Benson argued below that the court had the duty to supplement its jury instructions. Whether there was such a duty and what a supplemental instruction would have said are at issue.

Trial counsel argued that the court's failure to notify counsel was prejudicial to Benson for the following reason:

> Had the jurors' question been provided to counsel, I would have asked the Court to instruct the jurors *pursuant to the instructions that they had to be unanimous about the conduct that constituted the assault.* That would have been the appropriate answer to the question. I think that's the answer the Court would have given, consistent with the jury instructions.[25]

When the trial court replied to this argument by stating that its Instruction 17 already provided the information counsel sought, counsel did not provide any alternative proposals.[26]

These arguments are grounded in the view that the State cannot bear its burden to show beyond a reasonable doubt the absence of prejudice due to the court's failure to notify counsel of the improper communication of the bailiff with the jury during deliberations. This view is mistaken because the improper communication was harmless beyond a reasonable doubt as explained earlier.

---

[25] Report of Proceedings Vol. 5 (January 16, 2015) at 732 (emphasis added).

[26] Instruction 17 stated: "In alleging that the defendant committed Assault in the Third Degree the State relies upon evidence regarding a single act constituting the alleged crime. To convict the defendant you must unanimously agree that this specific act was proved." Clerk's Papers at 48.

On appeal, Benson makes a new argument. He asserts that the trial court had the duty to give a supplemental instruction to the jury in either of two ways.

First, he contends the court should have given the jury a supplemental instruction that "To convict the defendant of Assault in the Third Degree you must agree *the specific act of a shoulder bump was proved*."[27] Second, he contends that the following alternative supplemental instruction should have been given: "For Count II [third degree assault], the State has elected to charge only *the specific act of shoulder checking*."[28] We cannot agree that this new argument supports the conclusion that the court was required to give any supplemental instruction. The principle reason for this conclusion is that either of these newly argued alternative instructions would have constituted an unconstitutional comment on the evidence.

Article IV, section 16 of Washington's constitution prohibits a judge from "instructing a jury that 'matters of fact have been established as a matter of law.'"[29] Judicial comments on the evidence are prohibited to prevent a trial judge's opinion from influencing the jury.[30]

A jury instruction improperly comments on the evidence when it "relieve[s] the State of its burden" of proof or "resolve[s] a contested factual issue for the

---

[27] Brief of Appellant at 16-17 (emphasis added).

[28] Id. at 17 (emphasis added).

[29] Besabe, 166 Wn. App. at 880 (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

[30] In re Det. of Pouncy, 144 Wn. App. 609, 621-22, 184 P.3d 651 (2008), aff'd, 168 Wn.2d 382, 229 P.3d 678 (2010).

jury."[31] For example, in <u>State v. Becker</u>, the defendants received enhanced criminal sentences for delivering a controlled substance within 1,000 feet of school grounds.[32] The defendants contested whether a certain program was a school, but the special verdict form included the word "school" in the program's title.[33]

The supreme court held that the special verdict form relieved the State of its burden to prove all elements of the sentence enhancement statute "[b]y effectively removing [the] disputed issue of fact from the jury's consideration."[34] It specifically determined that the error "amounted to an impermissible comment on the evidence" because "the trial court literally instructed the jury that [the program] was a school."[35]

At trial in this case, the parties disputed whether Benson shoulder bumped or checked Deputy Mulligan. Either of Benson's proposed instructions would have resulted in a comment on the evidence because they would "resolve a contested factual issue for the jury."[36]

Benson attempts to support his argument by citing <u>State v. Galbreath</u>, where the supreme court stated that a trial judge "is not totally prohibited from

---

[31] <u>State v. Brush</u>, 183 Wn.2d 550, 559, 353 P.3d 213 (2015).

[32] 132 Wn.2d 54, 56, 935 P.2d 1321 (1997).

[33] <u>Id.</u> at 64-65.

[34] <u>Id.</u> at 65.

[35] <u>Id.</u>

[36] <u>Brush</u>, 183 Wn.2d at 559.

11

making any reference to" case evidence.[37] That case does not require a different result here.

There, the supreme court stated that a trial judge may:

advise the jury as to the purpose for which certain evidence is admitted and may be considered (e.g., prior convictions), or to caution the jury as to the application of some portion of the testimony (e.g., statements of an accomplice), or to outline the dispositive issues or premises which the jury must or may find.[38]

But Benson's proposed instructions do not fit within any of these examples of a trial judge's proper reference to evidence.

Benson also relies on two federal cases to support his argument. But these cases are distinguishable because the juries asked legal questions, not factual ones, as in this case. And neither case involved the state constitutional provision barring comment on the evidence that exists in this case.

For example, in Bollenbach v. United States, the jury asked "'Can any act of conspiracy be performed after the crime is committed?'"[39] The United States Supreme Court stated that the jury was clearly confused, which "required guidance by a lucid statement of the relevant *legal criteria*. When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."[40]

---

[37] 69 Wn.2d 664, 671, 419 P.2d 800 (1966).

[38] Id.

[39] 326 U.S. 607, 609, 66 S. Ct. 402, 90 L. Ed. 350 (1946).

[40] Id. at 612-13 (emphasis added).

Conversely, in this case, the jury asked a factual question: asking "what should be considered as the assault."[41] Thus, this argument is unpersuasive.

In Davis v. Greer, the jury asked if it could "bring a verdict of involuntary manslaughter without a verdict of robbery?"[42] The trial court instructed the jury to carefully consider its instructions.[43] The seventh circuit court of appeals stated that "The judge has a duty to respond to the jury's request with sufficient specificity to clarify the jury's problem."[44] But it also stated that "the court may respond to the question by reinstructing the jury."[45]

The court ultimately concluded that the trial court's response to the jury was "sufficiently specific to clarify the jury's confusion" because the jury's question "would have been answered" if it took the court's advice to reread the instructions.[46]

Again, the case before us is distinguishable because the jury asked a factual question. And Davis further supports the conclusion that a court may respond to a jury question by referring the jury to its instructions.

At oral argument of this case, Benson argued that two state cases support his argument. They do not.

---

[41] Clerk's Papers at 70.

[42] 675 F.2d 141, 145 (7th Cir. 1982).

[43] Id.

[44] Id.

[45] Id.

[46] Id. at 146.

13

In <u>State v. Campbell</u>, the trial court instructed the jury that they must be unanimous to answer "yes" on the special verdict form and to answer "no" if they have a reasonable doubt as to the question.[47] During deliberations, the jury asked the court if it could answer "no" on the special verdict form if they were not in unanimous agreement or if they must agree unanimously "yes" or "no."[48]

We concluded that the instruction was erroneous because it "failed to inform the jury how to collectively answer 'no' to the special verdicts."[49] We also determined that "This error was compounded when, in response to the jury's question, the trial court referred the jurors back to the instructions already given rather than clarifying the applicable law."[50] Thus, we concluded that the trial court abused its discretion by not issuing a clarifying instruction.[51]

Benson argues that this case requires a trial judge to issue a corrective instruction to clear up jury confusion. But as previously stated, the jury asked a factual question in Benson's case, not a legal one.

In <u>State v. Laramie</u>, there was a discrepancy between the second degree assault instruction and the amended information.[52] After the court read the instructions to the jury, the State advised the court of the discrepancy and asked

---

[47] 163 Wn. App. 394, 398, 260 P.3d 235 (2011), <u>vacated on remand</u>, noted at 175 Wn.2d 1021 (2012).

[48] <u>Id.</u>

[49] <u>Id.</u> at 401.

[50] <u>Id.</u> at 401-02.

[51] <u>Id.</u> at 402.

[52] 141 Wn. App. 332, 341, 169 P.3d 859 (2007).

the court to amend the instruction and reinstruct the jury or allow an amendment to the information to conform to the proof.[53] The court granted the State's motion to amend the information and did not reinstruct the jury.[54]

Division Three of this court concluded that the trial court erred.[55] The court determined that the jury was instructed on an uncharged alternative means of committing assault and could have convicted Terrance Laramie based on either the charged or uncharged alternative means.[56]

Benson argues that the jury could have convicted him on an uncharged act, requiring that the court give further instructions. But Benson's case is distinguishable because there was no discrepancy between the amended information and jury instruction.

## MOTION FOR MISTRIAL

Benson argues that the trial court abused its discretion in denying the mistrial motion. We disagree.

Mistrials should be granted "only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be

---

[53] Id.

[54] Id. at 341-42.

[55] Id. at 342.

[56] Id. at 343.

fairly tried."[57] Trial courts have broad discretion to rule on trial irregularities and are "in the best position to determine if a trial irregularity caused prejudice."[58]

We review for abuse of discretion a trial court's denial of a mistrial motion.[59] "A trial court abuses its discretion when its 'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'"[60]

To determine whether an "irregularity" warrants a mistrial, this court "'examine[s] (1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it.'"[61]

*Violation of In Limine Order*

Benson argues that State witnesses gave improper opinion testimony on Benson's guilt in violation of an in limine order, depriving him of a fair trial. We hold that the brief references to "assault" were not such an irregularity that required the remedy of granting a mistrial motion. There was no abuse of discretion.

---

[57] State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012).

[58] State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838, review denied, 184 Wn.2d 1004 (2015).

[59] Emery, 174 Wn.2d at 765.

[60] Hundtofte, 181 Wn.2d at 6-7 (internal quotation marks omitted) (quoting Rohrich, 149 Wn.2d at 654).

[61] Emery, 174 Wn.2d at 765 (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

State v. Thompson[62] is instructive.  There, the State charged Heidi Walker with vehicular assault.[63]  Walker obtained an order preventing state troopers from using the term "reckless" in their testimony.[64]  A detective testified, using the word "reckless" to describe Walker's driving.[65]

The trial court denied Walker's mistrial motion and instructed the jury to disregard that testimony.[66]  After the jury returned a guilty verdict, Walker appealed, arguing that the detective's remark was an improper expression of her guilt.[67]

In its analysis, Division Three of this court stated that the detective's remark was "sufficiently serious" because it violated the in limine order.[68]  But the court also determined that the detective's statement was "clearly cumulative" because other witnesses previously testified to their observations of Walker's driving.[69]  The court also stated that its instruction to the jury to disregard the testimony was "[o]f particular importance" and that "[w]e presume the jury followed the court's instruction."[70]

---

[62] 90 Wn. App. 41, 950 P.2d 977 (1998).

[63] Id. at 44.

[64] Id.

[65] Id. at 45.

[66] Id.

[67] Id.

[68] Id. at 46.

[69] Id.

[70] Id. at 46-47.

Thus, the court concluded that "[i]n light of the cumulative evidence of recklessness and the trial court's reasonable instruction to disregard [the detective's] statement, the irregularity here was not so egregious as to deny Ms. Walker a fair trial."[71]

This case is similar. Here, the trial court granted Benson's motion in limine, prohibiting State witnesses from "deliberately and intentionally describing Mr. Benson's conduct as an assault or as assaultive."[72]

Deputy Fitchett testified to the incident, stating that Benson walked towards Deputy Mulligan and "hit Deputy Mulligan, knocking him back towards the wall."[73] Deputy Fitchett also stated that Benson "hit Deputy Mulligan like in the chest, shoulder area, knocking him back as he pas[sed]."[74] Deputy Fitchett later stated that Deputy Mulligan "had been assaulted."[75]

Benson objected and moved to strike due to the "pretrial rulings."[76] The court sustained the objection and instructed the jury to disregard Deputy Fitchett's last answer.

During recess, out of the presence of the jury, Benson moved for a mistrial. He argued that Deputy Fitchett testified to Benson's guilt. The

---

[71] Id.

[72] Report of Proceedings Vol. 1 (November 10, 2014) at 62.

[73] Report of Proceedings Vol. 2 (November 18, 2014) at 234.

[74] Id.

[75] Id. at 235.

[76] Id. at 236.

prosecutor acknowledged the violation of the court's order in limine, but expressed the view that use of the word was neither intentional nor prejudicial.

The court denied Benson's motion, stating:

> [M]y observation of the witness and the context does not suggest to me that it was . . . was flagrant or intentional. And in light of the entire record, it's not my conclusion that a mistrial should be granted. I don't believe that there's any substantial likelihood that there's an impact on the jury in light of the information that preceded the motion that the jury already had.[77]

The court properly exercised its discretion for the reasons expressed in this ruling.

The next day, Sergeant Chinnick testified to his investigation of the use of force during the incident. Sergeant Chinnick used the word "assault." Benson again moved to strike. The court granted the motion and instructed the jury to disregard the use of the word "assault." Benson did not request any additional remedy.

Benson argues that Deputy Fitchett's and Sergeant Chinnick's testimony were direct opinions on Benson's guilt as to the assault charge. But that is not the issue here. Because Benson successfully objected to these remarks, we need not consider whether these remarks were improper opinion testimony. Rather, the issue is whether the trial court abused its discretion in denying Benson's motion for mistrial.

Deputy Fitchett's use of the word "assault" was "sufficiently serious" under Thompson because it violated the in limine order excluding that word.[78] But this

---

[77] Report of Proceedings Vol. 2 (November 18, 2014) at 262-63.

[78] Thompson, 90 Wn. App. at 46.

19

improper remark was cumulative. Deputy Fitchett stated twice that Benson hit Deputy Mulligan before using the word "assault."

Additionally, the trial court instructed the jury to disregard Deputy Fitchett's use of the word "assault" after Benson objected. The jury also received a written instruction stating it was the "sole judge[] of the credibility of each witness." The instruction also stated that the jury must not discuss evidence that it was asked to disregard and must not consider it in reaching its verdict.

Thus, although Deputy Fitchett's improper use of the word assault was serious, it was also cumulative, and the court's instructions cured the potentially prejudicial effect of this remark. More importantly, trial courts are "in the best position to determine if a trial irregularity caused prejudice."[79] Accordingly, the trial court did not abuse its discretion in denying Benson's motion for a mistrial and for relief from the judgment due to Deputy Fitchett's improper use of the word "assault."

As to Sergeant Chinnick's testimony, Benson moved to strike, and the trial court granted this request, instructing the jury to disregard the use of the word. Benson received the remedy he requested and failed to move for a mistrial based upon the improper testimony. Thus, Benson did not preserve the error as to Sergeant Chinnick's improper use of the word "assault" in this appeal.

Benson argues that Deputy Fitchett's and Sergeant Chinnick's testimony was "highly prejudicial" because it was police testimony and because the evidence of the assault "was not overwhelming."

---

[79] Wade, 186 Wn. App. at 773.

But as explained above, the jury was instructed to not discuss or consider evidence that it was asked to disregard. We presume that the jury followed these instructions.[80]

Benson also argues that "the jury was not contemporaneously informed that it was the jury's sole responsib[ility] for determining whether the State had proved that an assault had occurred."[81] But Benson cites no authority indicating that a contemporaneous instruction is required. Thus, we need not consider this unsupported argument any further.

## PROSECUTORIAL MISCONDUCT

Benson argues that the prosecutor committed several acts of misconduct, depriving Benson of his right to a fair trial. There was no such misconduct.

We "review alleged prosecutorial misconduct in 'the context of the total argument, the issues in the case, the evidence [addressed in the argument], and the instructions given to the jury.'"[82] We "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured."[83]

### Prosecutor's Opinion of Guilt

Benson argues that the prosecutor gave her personal opinion on Benson's guilt, requiring reversal. This is incorrect.

---

[80] State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

[81] Brief of Appellant at 25.

[82] State v. Robinson, 189 Wn. App. 877, 893, 359 P.3d 874 (2015) (quoting Emery, 174 Wn.2d at 764 n.14).

[83] Emery, 174 Wn.2d at 762.

Prosecutors cannot express personal opinions on a defendant's guilt.[84] But "there is no prejudicial error unless it is 'clear and unmistakable' that counsel is expressing a personal opinion."[85]

To raise prosecutorial misconduct on appeal, a defendant must object or request a curative instruction at trial, "'unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.'"[86] This heightened standard requires that a defendant "show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[87] Additionally, when defense counsel fails to object, it "'strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial.'"[88]

---

[84] State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014).

[85] State v. Calvin, 176 Wn. App. 1, 19, 316 P.3d 496 (2013) (internal quotation marks omitted) (quoting State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (plurality opinion)).

[86] State v. Allen, 182 Wn.2d 364, 375, 341 P.3d 268 (2015) (quoting Emery, 174 Wn.2d at 760-61).

[87] Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

[88] State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (emphasis omitted) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

Courts distinguish between a prosecutor's opinion as an independent fact and an opinion deduced from the testimony in the case.[89] An opinion independent of the evidence is improper.[90]

When determining whether a prosecutor expresses an improper opinion of the defendant's guilt, we view the challenged comments in context.[91] Generally, claims for improper prosecutor opinion arise when the prosecutor makes a comment during opening and closing statements.[92] Juries "may be particularly aware of, and susceptible to, the arguments" presented during closing argument.[93]

Here, Benson was charged with disarming a law enforcement officer. During direct examination of Sergeant Chinnick, the prosecutor asked about the sheriff's policy on maintaining control of a weapon. Benson objected based on relevance. The prosecutor explained that the testimony "goes to . . . the impact of what happened when Mr. Benson gets a hold of the TASER. Also the State believes he pulled the TASER from Deputy Mulligan."[94] Benson did not object to this statement, and the court overruled his relevance objection.

---

[89] Id. at 53.

[90] See id.

[91] Id. at 52-53.

[92] See, e.g., Lindsay, 180 Wn.2d at 438; McKenzie, 157 Wn.2d at 57; State v. Price, 126 Wn. App. 617, 652, 109 P.3d 27 (2005).

[93] In re Glasmann, 175 Wn.2d 696, 707-08, 286 P.3d 673 (2012).

[94] Report of Proceedings Vol. 3 (November 19, 2014) at 356.

Benson argues that the prosecutor's statement commented on his guilt because it went to "the core element in dispute"—whether he disarmed an officer. But Benson fails to argue that "'no curative instruction would have obviated any prejudicial effect on the jury,'" which is required to establish this claim.[95]

Benson argues that the prosecutor's misconduct was flagrant because case law and professional standards clearly warned against such conduct. Benson cites In re Glasmann[96] to support this argument. That case is distinguishable.

In that case, the prosecutor presented photographs of the defendant during closing argument, which were deliberately altered to include "phrases calculated to influence the jury's assessment of [the defendant's] guilt and veracity."[97] The supreme court stated that case law and professional standards clearly warned against such conduct and that the prosecutor had a "deliberate goal of influencing the jury to return guilty verdicts."[98] The court held that the prosecutor's misconduct was flagrant and ill-intentioned.[99]

---

[95] Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

[96] 175 Wn.2d 696, 286 P.3d 673 (2012).

[97] Id. at 705.

[98] Id. at 708.

[99] Id. at 707.

Here, on the other hand, the record does not show that the prosecutor had a "deliberate goal of influencing the jury to return guilty verdicts."[100]

*Vouching*

Benson argues that the prosecutor committed misconduct by vouching for a witness's credibility, requiring reversal. We disagree.

"A prosecutor commits misconduct by vouching for a witness's credibility."[101] Vouching occurs when the prosecution places "'the prestige of the government behind the witness'" by "personally endors[ing]" the witness.[102]

As previously stated, there is no prejudicial error unless it is "'clear and unmistakable'" that counsel is expressing a personal opinion.[103]

Here, during direct examination of Deputy Mulligan, the prosecutor stated, "I'm embarrassed to ask this but did you and Deputy Fitchett come up with a story about Mr. Benson's activities to cover up anything?"[104] Benson objected "to the form of the question," and the prosecutor rephrased the question without the "embarrassed" remark.[105]

As an initial matter, it is important to note that Benson objected to the form of the question, rather than vouching. An objection based on question form is

---

[100] Id. at 708.

[101] Robinson, 189 Wn. App. at 892.

[102] Id. at 894 (quoting State v. Coleman, 155 Wn. App. 951, 957, 231 P.3d 212 (2010)).

[103] Calvin, 176 Wn. App. at 19 (internal quotation marks omitted) (quoting Brett, 126 Wn.2d at 175).

[104] Report of Proceedings Vol. 4 (November 20, 2014) at 494.

[105] Id.

generally used if "the question is too broad or too vague, . . . calls for a narrative answer, [or] is argumentative."[106] Thus, Benson did not assert a vouching objection at trial. Thus, his vouching argument on appeal is new. Accordingly, Benson did not properly object and has "'waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.'"[107] We see no flagrant or intentional misconduct here. Thus, the failure to preserve this argument below precludes review.

### "We Know"

Benson next argues that the prosecutor committed misconduct by using the phrase "we know" during closing argument. We disagree.

In closing argument, a prosecutor "has wide latitude to argue reasonable inferences from the evidence."[108] But "prosecutors should avoid using the phrase 'we know' because it 'readily blurs the line between improper vouching and legitimate summary.'"[109] But it is not improper to use the phrase to marshal admitted evidence "'and reasonable inferences from that evidence.'"[110]

Here, the prosecutor used the phrase to marshal admitted evidence.

---

[106] 5D, Karl B. Tegland, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE RULE 611 author's cmts. at 296 (2015-16 ed.).

[107] Allen, 182 Wn.2d at 375 (quoting Emery, 174 Wn.2d at 760-61).

[108] Thorgerson, 172 Wn.2d at 448.

[109] Robinson, 189 Wn. App. at 894-95 (quoting United States v. Younger, 398 F.3d 1179, 1191 (9th Cir. 2005)).

[110] Id. at 895 (quoting Younger, 398 F.3d at 1191).

During closing argument, the prosecutor used the phrase "we know" several times. For example, the prosecutor stated "we know the disarming occurred" and "we know that he did that" while summarizing testimony.[111] These examples demonstrate that the prosecutor used the phrase while discussing admitted evidence, showing that the prosecutor marshaled the evidence and "'reasonable inferences from that evidence.'"[112] Thus, Benson failed to show misconduct during closing argument.

Benson argues that the prosecutor used the phrase to improperly align herself with the jury. This argument is unpersuasive.

It is improper for a prosecutor to align him or herself with the jury and against a defendant.[113] For example, a prosecutor may not "attempt to align the jury against [the defendant] on racial or socioeconomic grounds."[114] The Minnesota supreme court also stated that a prosecutor may not "describe herself and the jury as a group of which the defendant is not a part."[115]

But that is not what the prosecutor did in this case. Rather, the prosecutor used the phrase to make inferences from the evidence discussed, and the phrase was synonymous with "the evidence shows" or "we know from the evidence."

---

[111] Report of Proceedings Vol. 5 (November 24, 2014) at 709-10.

[112] Robinson, 189 Wn. App. at 895 (quoting Younger, 398 F.3d at 1191).

[113] See State v. Reed, 102 Wn.2d 140, 147, 684 P.2d 699 (1984); Robinson, 189 Wn. App. at 894-95.

[114] Robinson, 189 Wn. App. at 895.

[115] State v. Mayhorn, 720 N.W.2d 776, 790 (Minn. 2006).

27

Benson also argues that the prosecutor used the phrase to improperly assert her opinion of Benson's guilt. But it is not "'clear and unmistakable'" that the prosecutor's use of the phrase expressed her personal opinion as to Benson's guilt.[116] Specifically, the context surrounding the prosecutor's statements reflects an explanation of the evidence, rather than a clear and unmistakable expression of personal opinion.

Lastly, Benson argues that cumulative, prejudicial prosecutorial misconduct deprived him of his right to a fair trial, citing State v. Walker.[117] But that case is distinguishable.

In that case, the prosecutor frequently made improper statements and arguments, which were further emphasized by the prosecutor's PowerPoint slides.[118] Division Two of this court determined that the prosecutor's improper arguments "could easily serve as the deciding factor" because the case "was largely a credibility contest" with conflicting evidence.[119] The court also held that the prosecutor's misconduct was flagrant and ill-intentioned and that "the cumulative effect" of the misconduct required reversal and a new trial.[120]

---

[116] Calvin, 176 Wn. App. at 19 (internal quotation marks omitted) (quoting Brett, 126 Wn.2d at 175).

[117] State v. Walker, 164 Wn. App. 724, 265 P.3d 191 (2011), adhered to on remand, noted at 173 Wn. App. 1027 (2013).

[118] Id. at 738.

[119] Id.

[120] Id. at 739.

Here, there were no instances of prosecutorial misconduct. Thus, there was nothing that requires reversal.

## CUMULATIVE ERROR

Benson argues that cumulative error requires reversal. We disagree.

Where several errors standing alone do not warrant reversal, the cumulative error doctrine requires reversal when the combined effects of the errors denied a defendant a fair trial.[121] But reversal of a defendant's conviction is required when "the totality of circumstances substantially prejudiced the defendant and denied him a fair trial."[122] Defendants are entitled to fair trials but not perfect trials.[123]

Here, the errors we discussed do not demonstrate that "the totality of circumstances substantially prejudiced [Benson] and denied him a fair trial."[124] There was no prejudicial error warranting reversal of Benson's judgment and sentence.

We affirm the judgment and sentence.

_____

WE CONCUR:

_____

_____

[121] State v. Davis, 175 Wn.2d 287, 345, 290 P.3d 43 (2012).

[122] In re Pers. Restraint of Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014).

[123] Davis, 175 Wn.2d at 345.

[124] In re Pers. Restraint of Cross, 180 Wn.2d at 690.

29